UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

ERICK DORILUS,

    Plaintiff,                                     CASE NO.:

vs.

COMPLETE PROPERTY MAINTENANCE, INC,
a Florida Profit Corporation,

    Defendant.
_____/

## COMPLAINT

COMES NOW the Plaintiff, ERICK DORILUS (hereinafter "DORILUS"), by and through the undersigned Counsel, and sues the Defendant, COMPLETE PROPERTY MAINTENANCE, INC., a Florida Profit Corporation (hereinafter "CPM"), and alleges the following:

## JURISDICTION AND VENUE

1. This is a civil action alleging violations of the Fair Labor Standards Act, with damages that exceed Fifteen Thousand Dollars ($15,000.00), exclusive of interest and costs.

2. This Court is vested with federal question jurisdiction over Plaintiff's claim arising under the Fair Labor Standards Act (hereinafter "FLSA"), 29 U.S.C. §§ 201 et seq., pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

3. Venue lies within the Southern District of Florida, Fort Lauderdale Division, pursuant to 28 U.S.C. § 1391(b), because all actions giving rise to this claim arose in this Judicial Circuit.

4. All statutory and administrative prerequisites have been met, waived, or abandoned prior to the filing of this action.

1

## PARTIES

5. At all times material hereto, CPM was duly authorized and licensed to do business in Broward County, Florida, with its principal address at 4101 Vinkemulder Road, Coconut Creek, Florida 33073, wherein it provided and continues to provide commercial landscaping services to customers throughout Broward, Palm Beach, Martin, and St. Lucie counties, with annual gross sales and/or business volume of $500,000 or more.

6. In the advancement of its business, CPM employed at least two (2) employees within the meaning of the FLSA.

7. In the advancement of its business, CPM engaged in and continues to engage in interstate commerce within the meaning of the FLSA.

8. At all times material hereto, DORILUS was a resident of Palm Beach County, Florida, and was an "employee" of Broward-County-based CPM, as defined by the FLSA.

9. CPM controlled DORILUS' duties, hours worked, and compensation. Accordingly, CPM was DORILUS' "employer" as defined by the FLSA.

## GENERAL ALLEGATIONS

10. Plaintiff DORILUS was employed as a full-time Mechanic for CPM from on or about July 29, 2013 through July 26, 2019.

11. Throughout his employment with CPM, DORILUS exhibited exemplary job performance.

12. From July 29, 2013 to December 2017—a period of 231 weeks, DORILUS was the only mechanic at his job site. As such, he was required to work more than forty (40) hours per week.

13. In fact, throughout the entirety of his employment with CPM, DORILUS worked more than forty (40) hours per week for CPM.

14. Notwithstanding the fact that he worked more than forty (40) hours per week, CPM never properly paid him for overtime hours.

15. From on or about July 29, 2013 through September 2013, DORILUS earned $900.00 weekly, or $22.50 per hour.

16. From July 29, 2013 through September 2013 (a 9 week period), DORILUS was required to work from 7:00am to 5:00pm Monday through Friday and from 7:00am to 4:00pm every Saturday. DORILUS was given a half hour lunch break every work day. Therefore, he worked 56 hours per week, or 16 overtime hours per week, for 9 weeks. In total, DORILUS is owed payment for 144 overtime hours from July 29, 2013 to September 2013, at a rate of $33.75 per overtime hour (equals time and one half of his $22.50 hourly rate), for a grand total of ***$4,860.00***.

17. From October 2013 through December 2014, DORILUS earned $975.00 weekly, or $24.38 per hour.

18. From October 2013 through December 2014 (a 65 week period), DORILUS was required to work from 6:00am to 5:00pm Monday through Friday and from 7:00am to 4:00pm every Saturday. DORILUS was given a half hour lunch break every work day. Therefore, he worked 61 hours per week, or 21 overtime hours per week, for 65 weeks. In total, DORILUS is owed payment for 1,365 overtime hours from October 2013 through December 2014, at a rate of $36.57 per overtime hour (equals time and one half of his $24.38 hourly rate), for a grand total of ***$49,918.05***.

19. From January 2015 through the beginning of April 2015, DORILUS earned $1,040.00 weekly, or $26.00 per hour.

20. From January 2015 through the beginning of April 2015 (a 14 week period), DORILUS was required to work from 6:00am to 5:00pm Monday through Friday and from 7:00am to 4:00pm every other Saturday. DORILUS was given a half hour lunch break every work day. Therefore, he worked 61 hours per week, or 21 overtime hours per week, for 7 weeks; and he worked 52.5 hours per week, or 12.5 overtime hours per week, for 7 weeks. In total, DORILUS is owed payment for 234.5 overtime hours from January 2015 through the beginning of April 2015, at a rate of $39.00 per overtime hour (equals time and one half of his $26.00 hourly rate), for a grand total of ***$9,145.50***.

21. From April 2015 through October 2015, DORILUS earned $1,040.00 weekly, or $26.00 per hour.

22. From mid-April 2015 through mid-October 2015 (a 26 week period), DORILUS was required to work from 6:00am to 5:00pm Monday through Friday and from 7:00am to 4:00pm every Saturday. DORILUS was given a half hour lunch break every work day. Therefore, he worked 61 hours per week, or 21 overtime hours per week, for 26 weeks. In total, DORILUS is owed payment for 546 overtime hours from mid-April 2015 through mid-October 2015, at a rate of $39.00 per overtime hour (equals time and one half of his $26.00 hourly rate), for a grand total of ***$21,294.00***.

23. From mid-October 2015 through February 2016, DORILUS earned $1,040.00 weekly, or $26.00 per hour.

24. From mid-October 2015 through February 2016 (a 20 week period), DORILUS was required to work from 6:00am to 5:00pm Monday through Friday and from 7:00am to 4:00pm

every other Saturday.  DORILUS was given a half hour lunch break every work day.  Therefore, he worked 61 hours per week, or 21 overtime hours per week, for 10 weeks; and he worked 52.5 hours per week, or 12.5 overtime hours per week, for 10 weeks.  In total, DORILUS is owed payment for 335 overtime hours from mid-October 2015 through February 2016, at a rate of $39.00 per overtime hour (equals time and one half of his $26.00 hourly rate), for a grand total of ***$13,065.00***.

25.     At the beginning of 2016, DORILUS told his manager, Mr. Tony Figherty (sic), that he was unhappy about not being paid for his overtime hours and threatened to resign from his job.  As a result, from March 2016 to June 2016, DORILUS earned $1,248.00 weekly.  He was paid for forty-eight (48) hours weekly at the same rate of $26.00 per hour.

26.     From March 2016 through June 2016, CPM failed to pay DORILUS for overtime hours at the *proper* overtime rate of "time and one half of his $26.00 hourly rate."

27.     In March 2016 (a 4 week period), DORILUS was required to work from 6:00am to 5:00pm Monday through Friday and from 7:00am to 4:00pm every other Saturday.  DORILUS was given a half hour lunch break every work day.  Therefore, he worked 61 hours per week, or 21 overtime hours per week for 2 weeks; and he worked 52.5 hours per week, or 12.5 overtime hours per week for 2 weeks.  In total, DORILUS worked 67 overtime hours in March 2016.  At a rate of $39.00 per overtime hour (equals time and one half of his $26.00 hourly rate), DORILUS was supposed to be paid $2,613.00.  Instead, he was paid for 8 additional hours each week for 4 weeks at a standard rate of $26.00, totaling $832.00.  DORILUS is still owed ***$1,781.00*** for overtime hours worked in March 2016.

28.     From April 2016 through June 2016 (a 13 week period), DORILUS was required to work from 6:00am to 5:00pm Monday through Friday and from 7:00am to 4:00pm every

Saturday. DORILUS was given a half hour lunch break every work day. Therefore, he worked 61 hours per week, or 21 overtime hours per week, for 13 weeks. In total, DORILUS worked 273 overtime hours from April 2016 through June 2016. At a rate of $39.00 per overtime hour (equals time and one half of his $26.00 hourly rate), DORILUS was supposed to be paid $10,647.00. Instead, he was paid for 8 additional hours each week for 13 weeks at a standard rate of $26.00, totaling $2,704.00. DORILUS is still owed *$7,943.00* for overtime hours worked from April 2016 through June 2016.

29. In July 2016, CPM stopped paying DORILUS the additional eight (8) hours weekly. As such, DORILUS' paycheck was for 40 hours per week.

30. From July 2016 through mid-October 2016, DORILUS earned $1,040.00 weekly, or $26.00 per hour.

31. From July 2016 through mid-October 2016 (a 15 week period), DORILUS was required to work from 6:00am to 5:00pm Monday through Friday and from 7:00am to 4:00pm every Saturday. DORILUS was given a half hour lunch break every work day. Therefore, he worked 61 hours per week, or 21 overtime hours per week, for 15 weeks. In total, DORILUS is owed payment for 315 overtime hours from July 2016 through mid-October 2016, at a rate of $39.00 per overtime hour (equals time and one half of his $26.00 hourly rate), for a grand total of *$12,285.00*.

32. From mid-October 2016 through March 2017, DORILUS earned $1,040.00 weekly, or $26.00 per hour.

33. From mid-October 2016 through March 2017 (a 24 week period), DORILUS was required to work from 6:00am to 5:00pm Monday through Friday and from 7:00am to 4:00pm every other Saturday. DORILUS was given a half hour lunch break every work day. Therefore,

6

he worked 61 hours per week, or 21 overtime hours per week, for 12 weeks; and he worked 52.5 hours per week, or 12.5 overtime hours per week, for 12 weeks. In total, DORILUS is owed payment for 402 overtime hours from mid-October 2016 through March 2017, at a rate of $39.00 per overtime hour (equals time and one half of his $26.00 hourly rate), for a grand total of ***$15,678.00***.

34. From April 2017 through mid-October 2017, DORILUS earned $1,040.00 weekly, or $26.00 per hour.

35. From April 2017 through mid-October 2017 (a 28 week period), DORILUS was required to work from 6:00am to 5:00pm Monday through Friday and from 7:00am to 4:00pm every Saturday. DORILUS was given a half hour lunch break every work day. Therefore, he worked 61 hours per week, or 21 overtime hours per week, for 28 weeks. In total, DORILUS is owed payment for 588 overtime hours from April 2017 through mid-October 2017, at a rate of $39.00 per overtime hour (equals time and one half of his $26.00 hourly rate), for a grand total of ***$22,932.00***.

36. On or about the end of 2017 or the beginning of 2018, CPM hired a second mechanic to work at DORILUS' job site.

37. From mid-October 2017 through March 2018, DORILUS earned $1,040.00 weekly, or $26.00 per hour.

38. From mid-October 2017 through March 2018 (a 24 week period), DORILUS was required to work from 6:00am to 5:00pm Monday through Friday and from 7:00am to 4:00pm every other Saturday. DORILUS was given a half hour lunch break every work day. Therefore, he worked 61 hours per week, or 21 overtime hours per week, for 12 weeks; and he worked 52.5 hours per week, or 12.5 overtime hours per week, for 12 weeks. In total, DORILUS is owed

payment for 402 overtime hours from mid-October 2017 through March 2018, at a rate of $39.00 per overtime hour (equals time and one half of his $26.00 hourly rate), for a grand total of *$15,678.00*.

39. From April 2018 through mid-October 2018, DORILUS earned $1,040.00 weekly, or $26.00 per hour.

40. From April 2018 through mid-October 2018 (a 28 week period), DORILUS was required to work from 6:00am to 5:00pm Monday through Friday and from 7:00am to 4:00pm every Saturday. DORILUS was given a half hour lunch break every work day. Therefore, he worked 61 hours per week, or 21 overtime hours per week, for 28 weeks. In total, DORILUS is owed payment for 588 overtime hours from April 2018 through mid-October 2018, at a rate of $39.00 per overtime hour (equals time and one half of his $26.00 hourly rate), for a grand total of *$22,932.00*.

41. From mid-October 2018 through March 2019, DORILUS earned $1,040.00 weekly, or $26.00 per hour.

42. From mid-October 2018 through March 2019 (a 24 week period), DORILUS was required to work from 6:00am to 5:00pm Monday through Friday and from 7:00am to 4:00pm every other Saturday. DORILUS was given a half hour lunch break every work day. Therefore, he worked 61 hours per week, or 21 overtime hours per week, for 12 weeks; and he worked 52.5 hours per week, or 12.5 overtime hours per week, for 12 weeks. In total, DORILUS is owed payment for 402 overtime hours from mid-October 2018 through March 2019, at a rate of $39.00 per overtime hour (equals time and one half of his $26.00 hourly rate), for a grand total of *$15,678.00*.

43. DORILUS repeatedly informed his supervisor, Tony Figherty (sic), that he was working more than 40 hours per week but was not being paid for his overtime hours. Mr. Figherty kept telling DORILUS that he would check the payroll and fix any discrepancies in his compensation.

44. After repeated complaints from DORILUS to his supervisor regarding CPM's failure to pay overtime hours, Mr. Figherty indicated to DORILUS that he would speak to the company owner about this problem and that the owner would issue him a large payment to properly compensate him for all of the unpaid overtime.

45. On or about March 2019, Mr. Figherty passed away, and CPM promoted another manager, named Alex (sic), to fill the position. DORILUS attempted to speak with his new supervisor about the unpaid overtime, but Alex did not want to discuss it.

46. In April 2019, when the new manager took over, DORILUS' work schedule changed.

47. From April 2019 through July 26, 2019, DORILUS earned $1,040.00 weekly, or $26.00 per hour.

48. From April 2019 through July 26, 2019 (a 16 week period), DORILUS was required to work from 6:30am to 4:30pm on Mondays, Tuesdays, Wednesdays, Fridays, and Saturdays. DORILUS was given a half hour lunch break every work day. Therefore, he worked a total of 47.5 hours weekly, or 7.5 overtime hours per week, for 16 weeks. In total, DORILUS is owed payment for 120 overtime hours from April 2019 through July 26, 2019, at a rate of $39.00 per overtime hour (equals time and one half of his $26.00 hourly rate), for a grand total of ***$4,680.00***.

49. In the summer of 2019, DORILUS was approached by the new manager Alex and was asked to fill out timesheets but to list only 40 hours weekly on the timesheet even though he was working more than 40 hours.

50. DORILUS refused to list only 40 hours weekly on his timesheet when he was actually working more than that. As a result, CPM terminated his employment on July 26, 2019.

51. CPM failed to pay or otherwise withheld from DORILUS his full and proper compensation for the overtime hours he worked from July 2013 through July 2019.

52. CPM knowingly and willfully refused to pay DORILUS his legally entitled overtime wages.

53. DORILUS is owed his total gross pay of ***Two Hundred Seventeen Thousand Eight Hundred Sixty-Nine Dollars and Fifty-Five Cents ($217,869.55)*** for overtime work, plus liquidated damages.

54. DORILUS has retained the services of the undersigned Counsel and is obligated to pay for the legal services provided.

### COUNT I – VIOLATION OF FAIR LABOR STANDARDS ACT ("FLSA")

55. Plaintiff DORILUS realleges and incorporates the allegations in paragraphs 1 through 54 above as if fully set forth herein.

56. Under the Fair Labor Standards Act, "no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

57. "Any employer who violates the provisions of Section 207 [of the Fair Labor Standards Act] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

58. DORILUS brings forth this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq., and alleges that he is entitled to the following: (a) unpaid overtime wages as listed above, and (b) liquidated damages.

59. DORILUS seeks recovery of damages as referenced above and further seeks interest, costs, and attorney's fees, pursuant to 29 U.S.C. § 216(b).

WHEREFORE, Plaintiff, ERICK DORILUS, demands judgment against Defendant, COMPLETE PROPERTY MAINTENANCE, INC., a Florida Profit Corporation, plus interest, costs, reasonable attorney's fees, and such other remedy this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff, ERICK DORILUS, demands a trial by jury on all issues so triable.

Dated October 30, 2019.

Respectfully submitted,

**The Law Office of Gregory S. Sconzo, P.A.**
5080 PGA Boulevard, Suite 213
Palm Beach Gardens, FL 33408
Telephone: (561) 729-0940
Facsimile: (561) 491-9459

By: **/s/ Gregory S. Sconzo**
GREGORY S. SCONZO, ESQUIRE
Florida Bar No.: 0105553
ANDREA C. SCONZO, ESQUIRE
Florida Bar No.: 0105578
**Service Email:** sconzolaw@gmail.com
**Primary Email:** greg@sconzolawoffice.com